**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Case No. 26-cv-01625-NYW

JACKSON VITAL,

     Petitioner,

v.

JUAN BALTASAR,
GEORGE VALDEZ,
DAVID VENTURELLA,[1]
MARKWAYNE MULLIN, and
TODD BLANCHE,

     Respondents.

_____

### MEMORANDUM OPINION AND ORDER
_____

This matter is before the Court on the Verified Petition for Writ of Habeas Corpus (the "Petition"). [Doc. 1]. Respondents have responded to the Petition, [Doc. 7], and Petitioner has replied, [Doc. 8]. For the reasons set forth in this Order, the Petition is **GRANTED**.

### BACKGROUND

Petitioner Jackson Vital ("Petitioner" or "Mr. Vital") is a citizen of Haiti who has been in ICE custody since January 10, 2025. [Doc. 1 at ¶ 1]. He was admitted to the United States in 2002 "on an immigrant visa based on a petition by his U.S. citizen father." [*Id.* at ¶ 30]. In 2006, he was convicted of importation of controlled substances in violation of

_____

[1] Pursuant to Fed. R. Civ. P. 25(d), David Venturella is automatically substituted in as Respondents as the current office holder.

21 U.S.C. § 952(a).  [*Id.* at ¶ 34; Doc. 7-1 at ¶ 6].  He was released from prison in 2010, placed in removal proceedings, and released from immigration custody.  [Doc. 1 at ¶ 35].  In 2012, he was convicted of violations of 21 U.S.C. §§ 963, 846, 952(a), and 841(a) and 18 U.S.C. § 1001.  [*Id.* at ¶ 36].[2]  He was again released from federal custody in January 2025 and immediately taken into ICE custody.  [*Id.* at ¶ 37; Doc. 7-1 at ¶ 15].

Mr. Vital thereafter moved to reopen his removal proceedings, and the motion was granted in March 2025.  [Doc. 1 at ¶ 39].  He applied for asylum and requested relief from removal under the Convention Against Torture ("CAT").  [*Id.* at ¶ 41; Doc. 7-1 at ¶ 27].  The immigration judge denied Petitioner's application for asylum, denied his application for withholding of removal, and ordered him removed to Haiti.  [Doc. 7-1 at ¶ 31].  However, the immigration judge also granted Petitioner's application for a deferral of removal under CAT.  [*Id.*].[3]  DHS appealed that decision, and the appeal remains pending.

---

[2] Specifically, Mr. Vital was convicted of conspiracy to import and the importation of cocaine, in violation of 21 U.S.C. §§ 952(a), 960(b)(2)(B), and 963, conspiracy to possess with intent to distribute and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), and 846, and making a false statement and a false writing, in violation of 18 U.S.C. §§ 1001(a)(2) and 1001(a)(3).  [Doc. 7-1 at ¶ 13]; *see also United States v. Vital*, 531 F. App'x 950, 951 (11th Cir. 2013).

[3] "Withholding of removal" and "deferral of removal" are different forms of relief:

> Withholding of removal (under CAT) prohibits returning aliens to a specific country where they would face torture.  It is a more secure form of protection than deferral of removal.  It can be terminated only if [the Department of Homeland Security] establishes that an alien is not likely to be tortured in that country.
>
> . . .
>
> Deferral of removal also prohibits returning aliens to a specific country where they would face torture.  However, deferral of removal is granted to aliens who likely would face torture but who are ineligible for withholding of removal (under CAT), for example, certain criminals and persecutors.
>
> Deferral of removal is a more temporary form of protection.  It can be terminated more quickly and easily if an alien no longer is likely to be

2

[Doc. 1 at ¶ 42; Doc. 7 at 4 n.1].  Petitioner did not appeal the immigration judge's order, so the order of removal became final on November 27, 2025.  [Doc. 7-1 at ¶ 33].

Mr. Vital contends that he is "held in custody subject to the mandatory detention provisions [in] 8 U.S.C. § 1226(c)."  [Doc. 1 at ¶ 37].  He argues that his detention without a bond hearing has become unconstitutionally prolonged and that due process requires that he either be immediately released or given an individualized bond hearing.  [*Id.* at ¶¶ 68–70].  Respondents disagree and argue that Petitioner is not detained under § 1226(c) but is instead detained under § 1231, which governs detention of individuals ordered removed.  *See* [Doc. 7 at 1]; *see also* 8 U.S.C. § 1231(a)(2).  In his reply, Mr. Vital asserts that regardless of which statute contains authority for his detention, his detention has nevertheless become unconstitutionally prolonged.  [Doc. 8 at 2].

## LEGAL STANDARD

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

---

tortured in the country of removal, or if the U.S. government receives assurances that the alien will not be tortured if returned.

*Wanjiru v. Holder*, 705 F.3d 258, 263–64 (7th Cir. 2013) (quoting EOIR Fact Sheet, "Asylum and Withholding of Removal Relief, Convention Against Torture Protections," Jan. 15, 2009).

**ANALYSIS**

**I.    Mootness**

In their Response, Respondents contend that because Petitioner is subject to detention under § 1231, not § 1226(c), "any relief sought in the Petition regarding § 1226 is moot." [Doc. 7 at 1]. "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) (quotation omitted). The constitutional mootness doctrine "is grounded in the Article III requirement that federal courts may only decide actual ongoing cases or controversies." *Unified Sch. Dist. No. 259 v. Disability Rts. Ctr. of Kan.*, 491 F.3d 1143, 1147 (10th Cir. 2007) (quotation omitted). A live controversy ceases to exist, and a case becomes moot, when "it becomes impossible for a court to grant effective relief." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (quotation omitted).

Respondents argue that the Petition is moot because Mr. Vital "seeks relief pursuant to a statutory provision that does not apply to him" and because his "challenges to his detention all contest the legality of a statute to which he is no longer subject." [Doc. 7 at 7 (emphasis omitted)]. The Court respectfully disagrees. Mr. Vital does not challenge the legality of § 1226(c), nor does he seek relief "pursuant to" that statute. Rather, he challenges the legality of his *detention*, and he seeks relief under the Fifth Amendment's due process clause. *See, e.g.*, [Doc. 1 at ¶¶ 57, 68, 69 ("Petitioner's prolonged detention violates due process[.]"), 78–79]. Petitioner's mistaken assertion that his detention is mandated by § 1226(c) does not materially impact the constitutional question presented in the Petition or render it "impossible for [the Court] to grant effective relief."

*Abdulhaseeb*, 600 F.3d at 1311.  Accordingly, the Court finds that Mr. Vital's Petition is not moot and a live case or controversy remains.

## II.    The Legality of Petitioner's Detention

Petitioner posits that the Court should evaluate the constitutionality of his detention using the six-factor test recognized in *Singh v. Choate*, No. 19-cv-00909-KLM, 2019 WL 3943960, at *5 (D. Colo. Aug. 21, 2019).  *See* [Doc. 1 at ¶ 56 ("[C]ourts in this District apply a six-factor test when analyzing whether a noncitizen's detention has become unconstitutionally prolonged.")].  This test requires the Court to engage in a "balancing test to evaluate whether mandatory detention without a hearing has become unconstitutionally prolonged based on the following factors":

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Daley v. Choate*, No. 22-cv-03043-RM, 2023 WL 2336052, at *3 (D. Colo. Jan. 6, 2023).

Respondents take a different position, arguing that the Court should analyze the constitutionality of Petitioner's detention under the test set forth in *Zadvydas v. Davis*. [Doc. 7 at 9–10].  *Zadvydas* addresses detention under § 1231, which provides that a noncitizen must be detained during the 90-day period immediately following the order of removal—the "removal period."  533 U.S. at 683; 8 U.S.C. § 1231(a)(2)(A).  After the removal period has expired, the noncitizen "*may* be detained." 8 U.S.C. § 1231(a)(6) (emphasis added).  In *Zadvydas*, the Supreme Court considered whether the permissive "may" language allows for indefinite detention of a noncitizen subject to a final order of removal and concluded it does not.  533 U.S. at 688–89.  It did, however, recognize a

presumptively reasonable six-month period of detention. *Id.* "After this 6-month period," if the noncitizen demonstrates "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* But "if the government fails to demonstrate a significant likelihood of removal in the reasonably foreseeable future, the noncitizen must be released." *Ahrach v. Baltazar*, No. 25-cv-03195-PAB, 2025 WL 3227529, at *2 (D. Colo. Nov. 19, 2025) (citing *Zadvydas*, 533 U.S. at 701). Respondents contend that because Petitioner's post-removal-order detention is only just over six months, his detention is lawful under *Zadvydas*. [Doc. 7 at 9–10]. Respondents do not raise any alternative argument engaging with the *Singh* factors. *See* [*id.*].

Petitioner's sole habeas claim asserts that his prolonged detention violates his due process rights. [Doc. 1 at ¶¶ 56–68]. He does not argue that his prolonged detention violates the Immigration and Nationality Act or *Zadvydas*. *See* [*id.*]; *see also Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 938–39 (D. Colo. 2025) (explaining that "*Zadvydas* involved a *statutory* interpretation of § 1231(a)(6)" and recognizing that "as-applied constitutional challenges to prolonged detention are separate and distinct from the statutory prohibition against indefinite detention embodied in *Zadvydas*"). "In this District, the vast majority of judges have applied the *Singh* factors when assessing a noncitizen petitioner's *constitutional* challenge to prolonged detention without a bond hearing." *Arostegui-Maldonado*, 794 F. Supp. 3d at 938 (collecting cases).

Although the *Singh* factors were first applied in this District to determine whether a noncitizen's prolonged detention under *§ 1226(c)* was constitutional, *see Singh*, 2019 WL 3943960, at *4, this Court and other courts in this District have determined that

6

application of the *Singh* factors in the § 1231 context is appropriate. Indeed, "there appears to be little substantial distinction between the liberty interest of noncitizens detained pursuant to § 1226(c) and § 1231(a)(6), because [r]egardless of the stage of the proceedings, the same important interest is at stake—freedom from prolonged detention." *Juarez v. Choate*, No. 24-cv-00419-CNS, 2024 WL 1012912, at *6 (D. Colo. Mar. 8, 2024) (quotation omitted); *see also Vizguerra-Ramirez v. Baltazar*, No. 25-cv-00881-NYW, 2025 WL 3653158, at *11 (D. Colo. Dec. 17, 2025) (agreeing with the analysis in *Juarez*); *Ramirez v. Bondi*, No. 25-cv-01002-RMR, 2025 WL 1294919, at *6 (D. Colo. May 5, 2025) (same), *appeal docketed*, No. 25-1263 (10th Cir. July 8, 2025); *Arostegui-Maldonado*, 794 F. Supp. 3d at 939 (same). Accordingly, following the weight of authority in this District, the Court will employ the *Singh* factors to assess the constitutionality of Petitioner's detention.

**Length of Detention.** Mr. Vital has been detained since January 10, 2025, [Doc. 1 at ¶ 1], which amounts to roughly 18 months of detention. In analogous cases where petitioners were detained for similar periods of time, courts in this District have concluded that the first *Singh* factor weighed in favor of the petitioner. *See, e.g.*, *de Zarate v. Choate*, No. 23-cv-00571-PAB, 2023 WL 2574370, at *4 (D. Colo. Mar. 20, 2023) (15-month detention); *Arostegui-Maldonado*, 794 F. Supp. 3d at 939 (20-month detention); *Martinez v. Ceja*, 760 F. Supp. 3d 1188, 1196 (D. Colo. 2024) (21-month detention); *Ramirez*, 2025 WL 1294919, at *6 (505-day detention). This factor weighs in Mr. Vital's favor.

**Likely Duration of Future Detention.** "Courts examine the anticipated duration of all removal proceedings—including administrative and judicial appeals—when estimating how long detention will last." *Villaescusa-Rios v. Choate*, No. 20-cv-03187-

CMA, 2021 WL 269766, at *3 (D. Colo. Jan. 27, 2021) (quotation omitted). The government's appeal of the immigration judge's decision remains pending, [Doc. 7-1 at ¶ 36], and it is possible that any BIA decision on that appeal could subsequently be appealed to the Tenth Circuit, *see Villaescusa-Rios*, 2021 WL 269766, at *3 ("There is a significant probability that Mr. Villaescusa-Rios's detention will continue both during the pendency DHS's appeal before the BIA and throughout the course of a judicial appeal by either side."). Although Petitioner's detention "will definitely terminate at some point, . . . that point is likely to be many months or even years from now." *Singh*, 2019 WL 3943960, at *6. This factor weighs in favor of Mr. Vital.

**Conditions of Petitioner's Detention.** For the third *Singh* factor, the Court considers "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." *Villaescusa-Rios*, 2021 WL 269766, at *4 (quotation omitted). Petitioner is detained at the Aurora ICE Processing Center in Aurora, Colorado. [Doc. 1 at ¶ 15]. He alleges that detainees at this facility are subject to "punitive conditions akin to penal confinement, including being forced to wear government-issued clothing, having their access to the outdoors and recreation either denied or severely limited, and being forbidden from engaging in contact visitation with loved ones." [*Id.* at ¶ 46]. He also asserts that "[t]he Aurora facility is notorious for deplorable conditions and systemic failures jeopardizing the health and safety of those in its custody, placing detained persons like Petitioner in danger of harm and death." [*Id.* at ¶ 47]. Respondents do not contest these assertions. *See* [Doc. 7].

"[C]ourts in this District have found that conditions in the Aurora facility are not meaningfully different from criminal detention." *Ramirez*, 2025 WL 1294919, at *6

(collecting cases); *see also Martinez*, 760 F. Supp. 3d at 1195 ("Mr. Martinez's allegations regarding his confinement at the Aurora Detention Facility, which respondents do not contest, demonstrate that he is being held in conditions resembling penal confinement."). The Court agrees with these decisions. Petitioner's uncontested allegations establish that the conditions at the Aurora facility resemble penal confinement. This factor weighs in Petitioner's favor.

**Delays Attributable to Petitioner or the Government.** The Court considers the fourth and fifth *Singh* factors together. Petitioner argues that he "has not engaged in any dilatory tactics and he continues to diligently defend himself against removal." [Doc. 1 at ¶ 64]. Respondents do not contest this assertion, [Doc. 7], so the Court concludes that the fourth factor weighs in Petitioner's favor.

Petitioner also represents that he "is not aware of any bad faith delay by Respondents," but he asserts that the "BIA has yet to produce the transcript or briefing schedule" in the pending appeal, so this delay is attributable to the Government. [Doc. 1 at ¶¶ 44, 66]. However, Petitioner provides no concrete information about how long it typically takes the BIA to complete these preliminary steps, so the Court is unable to determine whether there has been any material delay in the BIA appeal. Furthermore, the fact that the Government appealed does not in itself demonstrate dilatory conduct. *See Martinez*, 760 F. Supp. 3d at 1195 ("[T]he Court will not hold the fact that respondents appealed against respondents in considering any delay in the immigration proceedings given that Mr. Martinez does not argue that the appeal was made in bad faith or as a dilatory tactic."). The Court thus finds the fifth factor is neutral. *See de Zarate*, 2023 WL 2574370, at *4 (finding fifth factor neutral where the petitioner argued that DHS failed to

timely provide records to the immigration court, but there was "no suggestion that [the] respondents acted with carelessness or bad faith").

**Likelihood of Removal.** Finally, the Court considers "the likelihood that removal proceedings will result in [Petitioner's] removal." *Juarez*, 2024 WL 1012912, at *7. "The more likely that the [detainee] will be removed, the longer the detention that will be deemed reasonable." *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019) (quotation omitted). Mr. Vital argues that he has "a strong chance of ultimately receiving relief from removal in the form of deferral of removal under the Convention Against Torture" because "as of now, the only adjudicator to review Petitioner's claims has found that he qualifies for his requested relief." [Doc. 1 at ¶ 67]. At the same time, the Court notes that Petitioner does have a final order of removal, *see* [Doc. 7-1 at ¶¶ 31, 33], and although Petitioner was granted a deferral of removal, he was denied outright *withholding* of removal, *see* [*id.* at ¶ 31].

The Court is mindful that the immigration judge's decision is pending on appeal, and this Court makes no attempt to weigh in on that matter. Here, however, the Court finds that this factor weighs slightly in Petitioner's favor since the immigration judge granted Petitioner deferral of removal, which suggests that his claim has "at least some merit." *Ramirez*, 2025 WL 1294919, at *7; *see also Juarez*, 2024 WL 1012912, at *7 (finding this factor "slightly favor[ed]" the petitioner because a reasonable-fear finding demonstrated that her claim was "colorable").

In sum, five of the six *Singh* factors weigh in Petitioner's favor, and the remaining factor is neutral. Considering all of the factors as a whole, the Court concludes that Mr. Vital's continued detention requires an individualized bond hearing to comply with due

process requirements.  *See Juarez*, 2024 WL 1012912, at *8.

**III.    Appropriate Remedy**

Mr. Vital argues that "the appropriate remedy is release."  [Doc. 1 at ¶ 69]. Respondents do not respond to this argument or weigh in on the appropriate remedy should the Court find in Petitioner's favor.  [Doc. 7].

The cases Petitioner cites in support of his request for immediate release are not obviously applicable to the instant case or to Petitioner's circumstances.  *See Malam v. Adducci*, 452 F. Supp. 3d 643, 648, 661 (E.D. Mich. 2020) (granting temporary injunctive relief and immediate release due to COVID-19 pandemic where petitioner had several underlying health conditions).  Although courts have "inherent authority" to release habeas petitioners, *see Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001), this does not mean that immediate release is always the appropriate remedy.  And without any argument from Petitioner specifically explaining why immediate release is the only type of relief that can remedy the constitutional violation, the Court declines to order immediate release.[4]  Instead, courts in this District routinely order that detainees in Petitioner's position be given a bond hearing.  *See, e.g.*, *Juarez*, 2024 WL 1012912, at *9; *Martinez*, 760 F. Supp. 3d at 1199; *de Zarate*, 2023 WL 2574370, at *5; *Ramirez*, 2025 WL 1294919, at *8.

Petitioner argues that, at the bond hearing, the Government should bear the burden of justifying his continued detention by clear and convincing evidence.  [Doc. 1 at ¶ 71].  Respondents do not respond to this argument.  [Doc. 7].

---

[4] The Court notes that Petitioner brings a procedural due process claim.  *See* [Doc. 1 at ¶ 68].

The Court is mindful that "on its face, § 1231 does not require the government to provide noncitizens with a bond hearing at all, let alone one in which the burden is allocated to the government."  *Ramirez*, 2025 WL 1294919, at *7.  But this Court's conclusion that Petitioner is entitled to a bond hearing "emanates from the Due Process Clause, not from the post-removal detention statute."  *Juarez*, 2024 WL 1012912, at *8. And relevant here, "the Supreme Court has long held that the clear and convincing evidence standard applies to civil detention where an individual's liberty interest is at stake."  *Arostegui-Maldonado*, 794 F. Supp. 3d at 944 (collecting cases).  Because "the Court has already determined that a bond hearing is warranted, the Court is persuaded that placing the burden of proof on the government comports with due process requirements."  *Juarez*, 2024 WL 1012912, at *8; *Ramirez*, 2025 WL 1294919, at *7 (same).  *But see Martinez*, 760 F. Supp. 3d at 1196 (declining to place the burden on the government at the petitioner's bond hearing).  Accordingly, the Court will order that, at the bond hearing, the Government shall bear the burden of justifying Petitioner's detention by clear and convincing evidence.

For the reasons set forth in this Order, the Petition is **GRANTED**.  On or before **July 21, 2026**, Respondents shall produce Petitioner for a bond hearing before an immigration judge.  At the bond hearing, the Government must show by clear and convincing evidence that he is either a flight risk or a danger to the community.  On or before **July 28, 2026**, the Parties shall file a Joint Status Report informing the Court of the immigration judge's decision and setting forth their positions as to whether any

additional proceedings in this matter are required.[5]

<strong>CONCLUSION</strong>

For the reasons set forth in this Order, **IT IS ORDERED** that:

(1)   The Verified Petition for Writ of Habeas Corpus [Doc. 1] is **GRANTED**;

(2)   No later than **July 21, 2026**, Respondents shall bring Petitioner before an impartial immigration judge for a constitutionally adequate bond hearing at which the Government bears the burden of establishing by clear and convincing evidence that Petitioner presents a flight risk or danger to the community;

(3)   No later than **July 28, 2026**, the Parties shall file a Joint Status Report informing the Court of the immigration judge's decision and setting forth their positions as to whether any additional proceedings in this matter are required.

DATED:  July 7, 2026

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

[5] To the extent Petitioner asks the Court to impose additional conditions on the bond hearing, *see* [Doc. 1 at 28–29], this request is not supported by argument or legal authority and the Court declines to grant this requested relief.  Petitioner also asks the Court to award fees under the Equal Access to Justice Act.  [*Id.* at 29].  The Local Rules require that requests for attorney's fees be made via separate motion.  *See* D.C.COLO.LCivR 54.3.  Costs must be requested using the procedures specified in the Local Rules after a final judgment or order is entered.  D.C.COLO.LCivR 54.1.