**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Case No. 26-cv-01625-NYW

JACKSON VITAL,

Petitioner,

v.

JUAN BALTASAR,
GEORGE VALDEZ,
DAVID VENTURELLA,
MARKWAYNE MULLIN, and
TODD BLANCHE,

Respondents.

---

## ORDER

---

This matter is before the Court on Petitioner's Motion to Enforce this Court's Order and for Immediate Release (the "Motion" or "Motion to Enforce"). [Doc. 13]. Respondents "do not concede that the Motion is meritorious" but have declined to "submit[] a brief in opposition to the Motion detailing the facts and circumstances at issue." [Doc. 14 at 2]. Petitioner filed a reply brief. *See* [Doc. 15]. For the reasons set forth in this Order, the Motion to Enforce is respectfully **DENIED**.

## BACKGROUND

Petitioner Jackson Vital ("Petitioner" or "Mr. Vital") is a citizen of Haiti who has been in ICE custody since January 10, 2025. [Doc. 1 at ¶ 1]. He was admitted to the United States in 2002 "on an immigrant visa based on a petition by his U.S. citizen father." [*Id.* at ¶ 30]. In 2006, he was convicted of importation of controlled substances in violation of 21 U.S.C. § 952(a). [*Id.* at ¶ 34; Doc. 7-1 at ¶ 6]. He was released from prison in 2010,

placed in removal proceedings, and released from immigration custody. [Doc. 1 at ¶ 35]. In 2012, he was convicted of violations of 21 U.S.C. §§ 963, 846, 952(a), and 841(a) and 18 U.S.C. § 1001. [*Id.* at ¶ 36].[1] He was again released from federal custody in January 2025 and immediately taken into ICE custody. [*Id.* at ¶ 37; Doc. 7-1 at ¶ 15]. In April 2026, he filed a Petition for Writ of Habeas Corpus challenging the legality of his detention. [Doc. 1].

On July 7, 2026, the Court granted Mr. Vital's Petition after finding that his detention had become unconstitutionally prolonged. [Doc. 9].[2] The Court ordered Respondents to provide Mr. Vital a bond hearing at which "the Government must show by clear and convincing evidence that he is either a flight risk or a danger to the community." [*Id.* at 12].

A bond hearing was held on July 15, 2026, [Doc. 12 at 2], and the immigration judge (or "IJ") denied bond, [Doc. 13-6]. Mr. Vital filed the Motion to Enforce on July 23, 2026, arguing that the IJ failed to comply with the Court's order because she did not require the Government to justify Petitioner's detention by clear and convincing evidence. [Doc. 13].

---

[1] Specifically, Mr. Vital was convicted of conspiracy to import and the importation of cocaine, in violation of 21 U.S.C. §§ 952(a), 960(b)(2)(B), and 963, conspiracy to possess with intent to distribute and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), and 846, and making a false statement and a false writing, in violation of 18 U.S.C. §§ 1001(a)(2) and 1001(a)(3). [Doc. 7-1 at ¶ 13]; *see also United States v. Vital*, 531 F. App'x 950, 951 (11th Cir. 2013).

[2] The Court's analysis was conducted based on the Respondents' representation that Petitioner was denied under 8 U.S.C. § 1231. *See* [Doc. 9]. After the Court's Order, Respondents moved to withdraw their response brief on the basis that counsel had "just learned that, despite the information previously provided by Respondents, Petitioner is actually subject to detention pursuant to 8 U.S.C. § 1226(c), not 8 U.S.C. § 1231." [Doc. 10 at 1–2]. The Court denied that motion as moot upon concluding that the Court's due process analysis would be the same regardless of the statute authorizing Petitioner's detention. [Doc. 11].

## ANALYSIS

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose . . . submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Anderson v. Dunn*, 19 U.S. 204, 227 (1821)).

The INA provides that "[t]he Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review" and "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). Section 1226(e) thus "precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (cleaned up). But "[w]hether [a petitioner] received the due process to which he was entitled 'is not a matter of discretion' and is subject to judicial review." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)). Accordingly, the Court's review of Mr. Vital's bond hearing "is limited to whether it satisfied due process or otherwise suffered some defect that rendered it noncompliant with" the Court's Order. *Trejo v. Bullock*, No. 3:26-cv-00047, 2026 WL 598391, at *2 (E.D. Tenn. Mar. 3, 2026); *see also, e.g.*, *Castillo v. Field Off. Dir.*, No. 25-cv-25296, 2025 WL 4689387, at *5 (S.D. Fla. Dec. 19, 2025) ("Courts have repeatedly concluded that § 1226(e) does not preclude challenges to the procedures used in custody determinations under § 1226." (collecting cases)). The Court cannot and does not reweigh the evidence or "serv[e] as an appellate court over [the] IJ's bond decision." *Quiroz Zacarias v. Mullin*, No. 26-cv-00574-WJM, 2026 WL 1092162, at *3 (D. Colo. Apr. 22, 2026).

Mr. Vital does not contest the procedures employed at the bond hearing. Rather, he argues that the IJ failed to hold the Government to its burden to justify Petitioner's detention by clear and convincing evidence. [Doc. 13 at 8]. First, he argues that the IJ's legal framework "was drawn entirely from Board [of Immigration Appeals] authority that places the burden on the noncitizen," referencing the IJ's citations to *In re Adeniji*, *In re Guerra*, *In re Urena*, and *In re R-A-V-P-*. [*Id.*];[3] *see also* [Doc. 13-6 at 1–2]. However, the IJ's citations to these cases does not mean that she failed to comply with the Court's Order, as the IJ cited those cases for propositions other than the burden of proof. *See, e.g.*, [Doc. 13-6 at 1 ("First, the Court must consider whether the respondent's release from custody would pose a danger to people or property. *Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009). . . . If the noncitizen is not considered a danger, the Court must then consider whether they are likely to appear for future immigration proceedings. *Matter of R-A-V-P-*, 27 I&N Dec. 803, 804 (BIA 2020).")].

Mr. Vital also argues that the IJ recited the applicable burden as "the inverse of the sequence this Court described" because she said that an immigration judge should only set a bond if she "first determine[d] that the alien does not present a danger to the community." [Doc. 13 at 8]; *see also* [Doc. 13-6 at 1]. The Court understands Mr. Vital's point; the Court ordered that the Government must prove that Mr. Vital *is affirmatively* a danger to the community, and the IJ stated that, to set a bond, an immigration judge should find that the detainee *is not* a danger to the community. *See* [Doc. 13-6 at 1]. But the Court finds that this imprecise language does not outweigh the numerous times that

[3] *See In Re Adeniji*, 22 I. & N. Dec. 1102 (BIA 1999); *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006); *In re Urena*, 25 I. & N. Dec. 140 (BIA 2009); *In re R-A-V-P-*, 27 I. & N. Dec. 803 (BIA 2020).

the IJ articulated the Government's burden in her order. *See, e.g.*, [*id.* at 2 ("The Court finds that DHS has established by clear and convincing evidence through Respondent's criminal history that he is a danger. . . . [T]he Court finds that DHS has established that Respondent is a flight risk.")].

Mr. Vital also contends that the IJ's flight-risk determination "cannot satisfy [the] clear and convincing evidence" standard, [Doc. 13 at 9], and that the IJ's dangerous determination "rested on [his criminal] convictions alone," which is not enough to establish dangerousness, [*id.* at 11 (emphases omitted)]. Because detention may be justified based on flight risk *or* dangerousness, the Court limits its analysis to Petitioner's dangerousness arguments. *See Quinteros v. Warden Pike Cnty. Corr. Facility*, 784 F. App'x 75, 79 n.2 (3d Cir. 2019) (declining to address flight-risk argument because "a finding of either dangerousness or flight risk, alone, [is] enough to demonstrate the necessity of" detention).

With respect to dangerousness, the IJ stated:

> DHS filed [Petitioner]'s criminal conviction records. These records establish that in 2006 [Petitioner] was convicted of 1 count of Importation of at Least 500 Grams of Cocaine under a federal statute and sentenced to 52 months' imprisonment and 5 years of supervised release with additional terms. In 2012 [Petitioner] was convicted of charges of six counts under federal statutes, including Conspiracy to Import to the United States and Conspiracy to Possess with Intent to Distribute 500 Grams or More of Cocaine, Importation of and Possession with Intent to Distribute 500 Grams or More of Cocaine, and False Statement/False Writing and Document on. [Petitioner] was sentenced to 170-month and 60-month concurrent prison sentences. Upon release, [Petitioner] was ordered to 8 and 3-year concurrent terms of supervised release with additional terms.
>
> The Court finds that DHS has established by clear and convincing evidence through [Petitioner]'s criminal history that he is a danger. Despite the imposition of the terms of supervised release that [Petitioner] would continue to be subject to by the criminal court upon release, the Court must consider [Petitioner]'s multiple convictions, the dangers to the community

> resulting from importation of dangerous narcotics, including cocaine, and that after previously receiving a prison sentence and terms of supervised release [Petitioner] was again convicted for continuing misconduct related to the importation of controlled substances. Therefore, the Court finds [Petitioner] is a danger.

[Doc. 13-6 at 2 (citations omitted)].

Some courts have recognized that a noncitizen may show a constitutional error where "'the evidence itself could not—as a matter of law—have supported' the IJ's decision to deny bond." *Garcia v. Hyde*, 817 F. Supp. 3d 112, 126 (D.R.I. 2025) (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019)). "For a bond hearing to be fundamentally fair, any evidence relied upon by an IJ 'must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community." *Green v. Lowe*, No. 4:26-cv-01009, 2026 WL 2569005, at *4 (M.D. Pa. Aug. 31, 2026) (cleaned up).

Petitioner contends that the IJ failed to comply with the Court's order because her "dangerousness determination rested on the convictions alone and did not engage the mitigating record." [Doc. 13 at 11]. He argues that "[p]ast convictions alone do not establish present dangerousness." [*Id.*]. He also notes that his past convictions were of drug offenses, and he asserts that he "has never been accused of violence, of harming or threatening anyone, or of damaging property." [*Id.* at 11–12]. He faults the IJ for not mentioning this in her decision. [*Id.*].

As Petitioner asserts, courts have held that a detainee's prior convictions alone "will not always be sufficient to justify denial of bond on the basis of dangerousness." *Salinas-Mondragon v. Chestnut*, No. 1:26-cv-00739-JLT-EPG, 2026 WL 2494845, at *2 (E.D. Cal. Aug. 25, 2026) (quotation omitted). *See, e.g.*, *Judulang v. Chertoff*, 562 F.

Supp. 2d 1119, 1126–27 (S.D. Cal. 2008); *Calderon-Rodriguez v. Wilcox*, 374 F. Supp. 3d 1024, 1027 (W.D. Wash. 2019); *Rivera v. Valdez*, No. 26-cv-01765-NRN, 2026 WL 2137800, at *5 (D. Colo. July 23, 2026) (finding that the petitioner's convictions, "standing alone," could not establish dangerousness). Instead of cursorily relying on criminal history, the immigration judge must also consider the severity and recency of the petitioner's criminal conduct. *Calderon-Rodriguez*, 374 F. Supp. 3d at 1027; *Salinas-Mondragon*, 2026 WL 2494845, at *2.

But agency precedent permits an IJ to consider a broad swath of "probative and specific" evidence when making a bond determination. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006) (setting out nine non-exclusive factors covering a noncitizen's ties to the United States and immigration history, among other things). This list includes the detainee's "criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Id.* The detainee's criminal history and the seriousness of his offenses are thus "facially valid considerations for a determination of dangerousness." *Green*, 2026 WL 2569005, at *5. The IJ has discretion to decide which factors to consider and how much weight each factor merits. *Guerra*, 24 I. & N. Dec. at 40. And of course, a habeas court "has no authority to encroach upon an IJ's discretionary weighing of the evidence." *Garcia*, 817 F. Supp. 3d at 126 (quoting *Diaz-Calderon v. Barr*, 535 F. Supp. 3d 669, 676 (E.D. Mich. 2020)).

Here, the immigration judge considered more than just Petitioner's criminal history because she also considered the recency and severity of his offenses. She noted that Petitioner's convictions were from 2006 and 2012 and are thus not recent. [Doc. 13-6 at 2]. But she also observed that "after previously receiving a prison sentence and terms of

supervised release[,] [Petitioner] was again convicted for continuing misconduct related to the importation of controlled substances." [*Id.*]. She also assessed the seriousness of his offenses, noting "the dangers to the community resulting from importation of dangerous narcotics, including cocaine." [*Id.*]. In other words, the IJ "considered appropriate factors in denying bond based on Petitioner's danger to the community, including the recency and severity of criminal history," and the Court cannot second-guess her weighing of the evidence. *R.G. v. Warden of the Golden State Annex Detention Facility*, No. 1:26-cv-03800-RLP, 2026 WL 2643075, at *3 (E.D. Cal. Sept. 8, 2026). "Complaints about the weighing of specific pieces of evidence and the ultimate the conclusion the immigration judge reached must be presented through the normal immigration appeal process." *Id.*; *see also Quiroz Zacarias*, 2026 WL 1092162, at *3 (the Court cannot reweigh evidence or act as an appellate court over the bond decision). Furthermore, to the extent Petitioner argues that the IJ failed to "engage the mitigating record," [Doc. 13 at 11], an immigration judge need not discuss "every piece of evidence" or "spell out every last detail of her reasoning," so long as "the logical underpinnings of the IJ's reasoning" are clear from the record. *Espana v. Nessinger*, --- F. Supp. 3d ----, 2026 WL 821788, at *10 (D.R.I. Mar. 25, 2026) (cleaned up).

While Petitioner may believe that the IJ should have weighed the evidence differently, the Court concludes that the evidence relied on can support a denial of bond "as a matter of law." *Garcia*, 817 F. Supp. 3d at 126 (quotation omitted). And the Court lacks jurisdiction to review the IJ's discretionary determination that such evidence weighs heavily enough to satisfy the clear-and-convincing standard. *See* § 1226(e). Petitioner has not demonstrated a due process violation with respect to the IJ's dangerousness

determination, and the Court need not address his flight-risk arguments. Accordingly, the Motion to Enforce is respectfully **DENIED**.

**CONCLUSION**

For the reasons set forth above, **IT IS ORDERED** that:

(1) Petitioner's Motion to Enforce this Court's Order and for Immediate Release [Doc. 13] is **DENIED**; and

(2) Because the single claim in the Petition has been resolved, the Court concludes that no further proceedings in this matter are required. The Clerk of Court is **DIRECTED** to enter judgment in favor of Petitioner and close this case; and

(3) Petitioner is awarded his costs pursuant to D.C.COLO.LCivR 54.1.

DATED: September 17, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge